UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


KAVEH L. AFRASIABIA,
    Plaintiff,


     v.                                 CIVIL ACTION NO.
                                         14-10239-PBS

TAMERLAN AWAD, CHRISTINE
MOSER, ALEXANDRA MOSER,
CAMBRIDGE POLICE DEPARTMENT,
OFFICER ANN DIMASCIO,
OFFICER JOHN CROWLEY,
ANONYMOUS CAMBRIDGE POLICE
OFFICERS and CITY OF CAMBRIDGE,
    Defendants.


**REPORT AND RECOMMENDATION RE:
DEFENDANTS CITY OF CAMBRIDGE, OFFICER ANN DIMASCIO,
OFFICER JOHN CROWLEY AND CAMBRIDGE POLICE DEPARTMENT'S
MOTION TO DISMISS (DOCKET ENTRY # 37); DEFENDANTS CITY
OF CAMBRIDGE'S, OFFICER JOHN CROWLEY'S AND OFFICER
ANN DIMASCIO'S MOTION TO DISMISS
(DOCKET ENTRY # 52)**

**September 14, 2015**

**BOWLER, U.S.M.J.**

    This action arises out of several arrests of plaintiff Kaveh

L. Afrasiabia ("plaintiff") by patrol officers of the Cambridge

Police Department beginning in June 2010.  Defendant City of

Cambridge ("the City") moves to dismiss the intentional tort

claims in an amended complaint under Fed.R.Civ.P. 12(b)(6) ("Rule

12(b)(6)") as subject to its sovereign immunity pursuant to

section 10(c) ("section 10(c)") of Massachusetts General Laws

chapter 258 ("chapter 258").  The claims arising out of the June

2010 arrest are also subject to dismissal as untimely, according to the City.  The City also seeks to dismiss the federal civil rights violations in Count Three due to the absence of any unconstitutional policy or custom.  (Docket Entry # 52).

Defendants John Crowley ("Crowley") and Ann Dimascio ("Dimascio"), respectively a detective and a patrol officer with the Cambridge Police Department, move to dismiss the claims against them under Fed.R.Civ.P. 12(b)(5) ("Rule 12(b)(5)") due to insufficient service of process.  (Docket Entry ## 37, 52).[1] Defendant Cambridge Police Department ("the Department") moves to dismiss the claims against it under Rule 12(b)(6) because it is not a legal entity subject to suit separate and apart from the City.  (Docket Entry # 37).  On August 19, 2015, this court heard oral argument on the motions (Docket Entry ## 37, 52)[2] and on September 9, 2015, conducted an evidentiary hearing on the issue of service of process of the amended complaint on Crowley or Dimascio.

PROCEDURAL BACKGROUND

---

[1]  The City also challenged service of the amended complaint in the first motion to dismiss (Docket Entry # 37) but acknowledged the argument was moot at an August 19, 2015 hearing. Plaintiff filed an executed summons on the city manager.  (Docket Entry # 59).

[2]  This court also heard argument on a motion to dismiss filed by defendants Christine Moser ("Christine Moser") and Alexandra Moser ("Alexandra Moser").  (Docket Entry # 67).  These defendants subsequently filed a motion to withdraw the motion to dismiss which this court allowed.

Plaintiff filed the original complaint on February 19, 2014,
against Christine Moser and defendant Tamerlan Awad ("Awad").  On
November 4, 2014, plaintiff filed the amended complaint (Docket
Entry # 27) which, as subsequently determined by a prior
magistrate judge (Docket Entry # 42), was filed as a matter of
right.[3]  On December 15, 2014, the City, the Department, Crowley
and Dimascio filed the first motion to dismiss.  (Docket Entry #
37).  Thereafter, plaintiff sought and this court allowed
plaintiff to attempt to serve five new summonses, as requested by
plaintiff in an emergency motion.  (Docket Entry # 39).  On April
27, 2015, the summonses were returned and filed as "executed"
with respect to the City, Crowley and Dimascio.  (Docket Entry ##
59, 60, 61).  As noted above, Crowley and Dimascio move to
dismiss the amended complaint under Rule 12(b)(5) given the
continued lack of service.  (Docket Entry ## 37, 52).  The City
seeks dismissal of the amended complaint under Rule 12(b)(6) and
the Department continues to assert it is not subject to suit as
an entity separate from the City.  (Docket Entry # 52).

The amended complaint sets out the following counts:  (1)
malicious abuse of process (Count One); (2) malicious prosecution

---

[3]  The magistrate judge initially allowed a motion for leave
to amend but limited the allowance to exclude Awad and Christine
Moser.  (Docket Entry # 26).  Thereafter, the magistrate judge
explained in the above cited January 2015 Report and
Recommendation (Docket Entry # 42) that no leave was required and
the amended complaint therefore "stands as filed," including as
to Awad and Christine Moser.  The district judge adopted the
January 2014 Report and Recommendation.  (Docket Entry # 45).

(Count Two); (3) violations of 42 U.S.C. § 1983 ("section 1983")
and a conspiracy to violate plaintiff's constitutional rights
under 42 U.S.C. § 1985 ("section 1985") (Count Three); (4) false
arrest and imprisonment (Count Four); (5) assault (Count Five);
(6) intentional infliction of emotional distress (Count Six); (7)
"unintentional infliction of emotional distress" (Count Seven);
and (8) defamation of character (Count Eight).  Because the
record subject to review under Rule 12(b)(5) for insufficient
service includes affidavits and documents not included in the
Rule 12(b)(6) record, this court considers the Rule 12(b)(5) and
the Rule 12(b)(6) motions separately and summarizes the record
accordingly.

I.  Rule 12(b)(6) Motions (Docket Entry ## 37, 52)

       The City and the Department each move to dismiss the amended
complaint under Rule 12(b)(6).  To survive a Rule 12(b)(6) motion
to dismiss, the amended complaint must include factual
allegations that when taken as true demonstrate a plausible claim
to relief even if actual proof of the facts is improbable.  Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 555-558 (2007); accord
Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 104 (1st Cir.
2015) (plaintiffs "survive a Rule 12(b)(6) motion to dismiss only
if their pleadings plausibly establish that they are entitled to
relief").  Thus, while "not equivalent to a probability
requirement, the plausibility standard asks for more than a sheer

4

possibility that a defendant has acted unlawfully." <u>Boroian v.</u>
<u>Mueller</u>, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation
marks omitted).  "[W]here the well-pleaded facts do not permit
the court to infer more than the mere possibility of misconduct,
the complaint . . . has not shown that the pleader is entitled to
relief."  <u>Feliciano-Hernandez v. Pereira-Castillo</u>, 663 F.3d 527,
533 (1st Cir. 2011) (internal quotation marks and citations
omitted).  Discarding legal conclusions and taking the facts in
the amended complaint as "true and read in a plaintiff's favor,"
the complaint "must state a plausible, but not a merely
conceivable, case for relief."  <u>Sepúlveda-Villarini v. Dept. of</u>
<u>Education of Puerto Rico</u>, 628 F.3d 25, 29-30 (1st Cir. 2010).

In evaluating a Rule 12(b)(6) motion, the court may
consider a limited category of documents outside the amended
complaint without converting the motion into one for summary
judgment.  Such documents include public records and documents
sufficiently referred to in the amended complaint.  <u>See</u> <u>Butler v.</u>
<u>Balolia</u>, 736 F.3d 609, 611 (1st Cir. 2013) (supplementing facts
in complaint "by examining 'documents incorporated by reference
into the complaint, matters of public record, and facts
susceptible to judicial notice'"); <u>Freeman v. Town of Hudson</u>, 714
F.3d 29, 36 (1st Cir. 2013) (court may consider "'official public
records; documents central to plaintiffs' claim; and documents
sufficiently referred to in the complaint'") (ellipses and

brackets omitted).  As to the former, a court may take judicial notice of complaints filed in related cases.  See E.I. Du Pont de Nemours & Co., Inc. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986) (federal court may take judicial notice of complaint filed in related case even though neither party "placed the complaint in the record"); Fed.R.Evid. 201(b).  As further explained in E.I. Du Pont, "'Federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"  Id. (quoting St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979), in parenthetical with brackets omitted).  The amended complaint refers to the proceedings regarding plaintiff's arrests and the criminal dockets filed by plaintiff are therefore part of the Rule 12(b)(6) record either as matters of public record or documents sufficiently referred to in the amended complaint.

A complaint also includes any documents attached to it. Fed.R.Civ.P. 10(c) ("an exhibit to a pleading is part of the pleading for all purposes").  The amended complaint served on Crowley and Dimascio (Docket Entry # 53-2) attached exhibits that are not attached to the amended complaint filed by plaintiff as of right (Docket Entry # 27).  The exhibits, however, fall under the above exceptions and it is therefore not necessary to address the discrepancy.  The only exhibit that does not fall within an

exception, a July 2010 newspaper article showing the dismissal of an arrest warrant for an unpaid motor vehicle ticket (Docket Entry # 52-2, p. 35), includes information already set out in the amended complaint (Docket Entry # 27, ¶ 1).

Adhering to the foregoing framework and construing the facts in plaintiff's favor, the record with respect to the Rule 12(b)(6) motions to dismiss (Docket Entry ## 37, 52) is as follows.

## FACTUAL BACKGROUND

Plaintiff, a former member of the "faculty at Boston University, Framingham State College and Tehran University," graduated from Boston University with a "Ph.D. in political science." (Docket Entry # 17). In or around April 1996, an arrest warrant issued out of the Massachusetts District Court Department, Newton Division. The warrant stemmed from a charge of operating a motor vehicle without a license. (Docket Entry # 27, ¶ 1) (Docket Entry # 53-1, p. 34).[4] In May 1996, plaintiff paid the fine.

In June 2010, however, Cambridge police arrested plaintiff and incarcerated him overnight based on the 1996 arrest

---

[4] This court takes judicial notice of the relevant court filing in the 1996 prosecution (Docket Entry # 53-1, p. 34) and the amended complaint refers to the 1996 arrest warrant.

warrant.[5]  The day after the arrest, Cambridge police transported

plaintiff "to court."  (Docket Entry # 27, ¶ 1).  During transit,

plaintiff suffered a "severe head injury," which required "months

of medical care."  (Docket Entry # 27, ¶ 1).  On June 29, 2010,

plaintiff was treated at Mount Auburn Hospital ("Mount Auburn")

in Cambridge for the head injury.  (Docket Entry # 70-2, p. 10).[6]

In dismissing the charges, "a judge stated the record clearly

showed [plaintiff] had paid the fine back in May, 1996 and there

was no basis for his arrest."  (Docket Entry # 27).  In November

2010, the City "agreed to cover $25000.00 of Afrasiabia's medical

expense[s]."  (Docket Entry # 27) (Docket Entry # 53-1, p. 16).

Cambridge police officers "were incensed by [plaintiff's] prior

criticisms of the Cambridge Police in the aftermath of the June

2010 incident."  (Docket Entry # 27, ¶ 11).

One year later on June 17, 2011, Dimascio applied for a

criminal complaint charging plaintiff with criminal harassment in

violation of section 43A(a) of Massachusetts General Laws chapter

265 ("section 43A") and making annoying telephone calls in

violation of section 14A of Massachusetts General Laws chapter

---

[5]  The amended complaint does not identify the names of the arresting or charging officers.

[6]  The amended complaint refers to the medical care and plaintiff filed a page of the hospital record from Mount Auburn in opposing the motion to dismiss.  Even if this court did not consider the hospital record, the recommendation would remain the same with respect to the statute of limitations argument inasmuch as the amended complaint states that plaintiff received "months of medical care."  (Docket Entry # 27, ¶ 1).

269.  Dimascio based the application on an interview with the
victim, Alexandra Moser.  The application reflects that Alexandra
Moser reported that plaintiff continued to text her and her
mother, Christine Moser, despite Alexandra Moser's requests to
plaintiff to stop the behavior.  Officer Clarke Larry of the
Cambridge Police Department reviewed and approved the request.
On June 20, 2011, a criminal complaint issued out of the
Massachusetts District Court Department, Cambridge Division
("Cambridge district court"), charging plaintiff with criminal
harassment in violation of section 43A ("the 2011 prosecution").
The Cambridge district court arraigned plaintiff and eventually
released him on his own personal recognizance.

On June 25, 2011, plaintiff filed a claim against Alexandra
Moser in the small claims session of the Massachusetts District
Court Department, Waltham Division.  (Docket Entry # 27, ¶ 9)
(Docket Entry # 1-2).  Plaintiff alleged that Alexandra Moser did
not return gold jewelry that she borrowed from plaintiff.  She
eventually returned the jewelry to Cambridge police in October
2011.  (Docket Entry # 27, ¶ 9).

On September 30, 2013, another criminal complaint issued
this time charging plaintiff with intimidating a witness,
Christine Moser, in violation of section 13B(a) of Massachusetts
General Laws chapter 268 ("section 13B") ("the 2013
prosecution").  Cambridge police arrested plaintiff and

incarcerated him for two days before he appeared in Cambridge district court on October 2, 2013. (Docket Entry # 70-3, p. 5) (Docket Entry # 27, ¶ 3). The charge arose out of plaintiff sending Christine Moser a letter expressing his intent to file suit against her because telephone records failed to show any telephone calls or texts by plaintiff. Plaintiff sent the letter after an October 2012 court proceeding in which the prosecutor represented that Christine Moser would not be called as a witness in the 2011 prosecution.

On October 7, 2014, the charges in the 2011 and 2013 prosecutions were dismissed for failure to prosecute. (Docket Entry # 70-3, pp. 6, 11) (Docket Entry # 27, ¶ 4). Thus, the Cambridge district court dismissed all of the charges and plaintiff "was cleared of any wrongdoing." (Docket Entry # 27, ¶ 4).

Cambridge patrol officers did not interview plaintiff before filing the charges that formed the basis of the 2011 and 2013 prosecutions. They also did not examine any telephone records prior to commencing the prosecutions. The statements made by Alexandra and Christine Moser about the texting and telephone calls were not true.[7] (Docket Entry # 27, ¶¶ 5, 6).

## DISCUSSION

---

[7] The amended complaint contains the additional legal conclusion that Christine Moser made "defamatory false statements." (Docket Entry # 27).

10

The City initially contends it is immune from liability for intentional torts under section 10(c) of chapter 258.  (Docket Entry # 53).  Plaintiff responds that the City is liable for negligence by, for example, not adhering to the City's guidelines regarding interviewing plaintiff before filing the criminal complaint in 2011.  (Docket Entry # 70).  The City replies that the amended complaint does not include a claim for negligence. (Docket Entry # 73).

Chapter 258, also known as the Massachusetts Tort Claims Act, "provide[s] 'a comprehensive and uniform regime of tort liability for public employers.'"  Morrissey v. New England Deaconess Ass'n-Abundant Life Communities, Inc., 940 N.E.2d 391, 399 (Mass. 2010).  The statute is liberally construed, id. at 401, and waives the sovereign immunity of the Commonwealth and its municipalities by allowing suits against a public employer "based on the negligent or wrongful conduct of public employees who acted within the scope of their employment."  Martini v. City of Pittsfield, 2015 WL 1476768, at *9 (D.Mass. March 31, 2015); see Daveiga v. Boston Public Health Commission, 869 N.E.2d 586, 589 (Mass. 2007) (chapter "258 replaced the common-law scheme by which the Commonwealth and its municipalities enjoyed immunity from suit for tortious wrongdoing, subject only to miscellaneous exceptions"); Roberts v. Town of Bridgewater, 2015 WL 4550783, at *3 (D.Mass. July 28, 2015) ("public employers maintain liability for the negligent acts of public employees committed within the scope of their employment"); Mass. Gen. L. ch. 258, § 2

("[p]ublic employers shall be liable for injury . . . caused by the negligent or wrongful act" of "any public employee while acting within the scope of his office or employment").  Section 10(c) excludes "claim[s] arising out of an intentional tort" from the reach of the waiver.  Mass. Gen. L. ch. 258, § 10(c); see Barrows v. Wareham Fire District, 976 N.E.2d 830, 835 (Mass.App.Ct. 2012).  Simply stated, section 10(c) "expressly exempts intentional torts from its provisions, and therefore a public employer cannot be sued for the intentionally tortious conduct of its employee."  Barrows v. Wareham Fire District, 976 N.E.2d at 835.

The language of section 10(c) excludes "any claim arising out of an intentional tort, *including assault*, battery, *false imprisonment*, *false arrest*, intentional mental distress, *malicious prosecution*, *malicious abuse of process*, *libel*, *slander*, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations."  Mass. Gen. L. ch. 258, § 10(c) (emphasis added).  The plain and unambiguous language of section 10(c) therefore bars the City's liability under Count One for "malicious abuse of process," Count Two for "malicious prosecution," Count Four for "false arrest and imprisonment," Count Five for "assault" and Count Eight for "defamation of character."  (Docket Entry # 27).  Although section 10(c) does not refer to "defamation," it does refer to libel and slander. Mass. Gen. L. ch. 258, § 10(c).  A defamation action "encompasses

12

libel and slander" and "affords a remedy for damage to the
reputation of the injured party."  HipSaver, Inc. v. Kiel, 984
N.E.2d 755, 762 (Mass. 2013).  The City is therefore exempt from
liability for defamation under section 10(c).  See Barrows v.
Wareham Fire District, 976 N.E.2d at 838 ("Legislature has
determined that both species of defamation, libel and slander,
are intentional torts for the purposes of § 10(c)").

      The intentional infliction of emotional distress claim in
Count Six is based on intentional conduct.  The claim alleges
that, "Defendants intentionally and deliberately inflicted
emotional distress on" plaintiff by maliciously prosecuting him.
(Docket Entry # 27).  As an intentional tort, it falls within the
reach of section 10(c) and cannot be maintained against the City.
See Parker v. Chief Justice For Administration and Management of
Trial Court, 852 N.E.2d 1097, 1103 (Mass.App.Ct. 2006) ("[w]ith
respect to intentional torts, including intentional infliction of
mental distress, claims against the public employer are barred"
under section 10(c)); Mass. Gen. L. ch. 258, § 10(c) (excluding,
inter alia, "intentional mental distress" claims).

      The City also asserts that the claim in Count Seven for
"unintentional infliction of emotional distress" is an
intentional tort under section 10(c).  The count alleges that,
"Defendants unintentionally and recklessly inflicted emotional
distress on" plaintiff by subjecting him to malicious
prosecution, abuse of lawful process and false arrest and
imprisonment.  The amended complaint, however, additionally

states that Dimascio and Crowley "knew or should have known" that the allegations against plaintiff were not true.  (Docket Entry # 27, ¶ 6).  In particular, they did not interview plaintiff or request his telephone records to examine the veracity of Alexandra and Christine Moser's statements.  (Docket Entry # 27, ¶ 6).

The City submits that recklessness is the same as intentional conduct.  It is true that reckless infliction of emotional distress may fall within the reach of section 10(c). See <u>Tilton v. Town of Franklin</u>, 506 N.E.2d 897, 899 (Mass.App.Ct. 1987) (section 10(c)'s reference to "'intentional mental distress' refers to the tort" of intentional or reckless infliction of emotional distress).  Recklessness, however, may also be "considered negligent, rather than intentional, conduct." <u>Parker v. Chief Justice For Administration and Management of Trial Court</u>, 852 N.E.2d at 1103 (citing <u>Forbush v. Lynn</u>, 625 N.E.2d 1370 (Mass.App.Ct. 1994)).  Construing the pro se complaint liberally, as required, leads to a construction that Count Seven sets out negligent conduct.  Accordingly, section 10(c) does not provide a basis to dismiss Count Seven.

The City raises an additional argument in the reply brief (Docket Entry # 73), namely, that any negligence claim arising out of the 2011 and 2013 incidents is deficient because plaintiff fails to satisfy the presentment requirements of the statute. See <u>Mass. Gen. L. ch. 258, § 4</u>.  Although a litigant may use a reply brief to clarify arguments previously made or to respond to

14

an argument an opposing party raises in an opposition, ordinarily it is not appropriate to use a reply brief to raise a new argument.  See United States v. Bradstreet, 207 F.3d 76, 80 n.1 (1st Cir. 2000) ("[w]hile a reply brief is not the proper place to raise new arguments, it is proper for a court to look there for clarification") (internal citations omitted); accord Gove v. Career Systems Development Corp., 689 F.3d 1, 11 n.7 (1st Cir. 2012).  This case is no exception particularly where plaintiff is proceeding pro se.  There is no reason why the City could not have raised the presentment argument in its opening brief.  In this court's discretion, this court declines to consider it.  See, e.g., United States v. Isler, 429 F.3d 19, 30 n.12 (1st Cir. 2005) (finding "a related argument that the district court erroneously applied the guidelines standard rather than the statutory standard" in reply brief and at oral argument "forfeited").

That said, the City is not foreclosed from raising the issue in a summary judgment motion or at other stages in this proceeding.  Plaintiff is also advised that the statutory requirement of presentment requires him to "present his claim in writing to the appropriate executive officer of the public employer" prior to instituting an action against the City for a claim for damages.  Rodriguez v. City of Somerville, 33 N.E.3d 1240, 1244 (Mass. 2015).

Next, the City, along with Crowley and Dimascio, assert that

15

the three year statute of limitations bars any claim arising out
of the June 2010 incident.  (Docket Entry # 53).[8]  They maintain
that the three year limitations period began to run when
plaintiff suffered the head injury on June 28, 2010, and that the
discovery rule does not apply.  Plaintiff argues that he
continues to experience symptoms, including migraine headaches,
from the head injury he sustained in June 2010.

In Massachusetts, the statute of limitations for a tort
claims is three years "after the cause of action accrues."  Mass.
Gen. L. ch. 260, §§ 2A, 4; see, e.g., Gauthier v. United States,
2011 WL 3902770, at *4 (D.Mass. Sept. 2, 2011) (negligent
infliction of emotional distress claim governed by three year
limitations period in Mass. Gen. Laws ch. 260, § 2A); Harrington
v. Costello, 7 N.E.3d 449, 453 (Mass. 2014) (defamation action
"must be 'commenced only within three years next after the cause
of action accrues'").  A three year time period also applies to
the section 1983 and 1985 claims in Count Three.  See Silvestri
v. Smith, 2015 WL 1781761, at *7 (D.Mass. April 17, 2015) ("in
Section 1983 actions arising in Massachusetts, the First Circuit
has applied the three-year statute of limitations imposed by
Massachusetts in personal injury actions"); see also Douglas v.

---

[8]   In the reply brief, the City raised the new argument that
the three year limitations period also barred the claims arising
out of the June 2011 incident.  (Docket Entry # 73).  As
previously explained, "a reply brief is not the proper place to
raise [a] new argument[]."  United States v. Bradstreet, 207 F.3d
at 80 n.1; accord Gove v. Career Systems Development Corp., 689
F.3d at 11 n.7.  In this court's discretion, this court declines
to consider it.

York County, 433 F.3d 143, 144 (1st Cir. 2005) (because "there is no federal statute of limitations for federal civil rights actions, courts look to the state limitations period for personal injury actions"); Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004) (section 1983 and 1985 "borrow the forum state's statute of limitations for personal injury claims"); Salcedo v. Town of Dudley, 629 F.Supp.2d 86, 96-97 (D.Mass. 2009) (applying three year limitations period in Mass. Gen. L. ch. 260, § 2A, to section 1983 and 1985 false arrests claims).

In order to allow a motion to dismiss based on a statute of limitations, "'the facts establishing the defense'" must be "'clear "on the face of the plaintiff's pleadings."'"  Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008).  A dismissal is therefore appropriate when "the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations period or equitable estoppel." Id.

In Massachusetts, "the general rule for tort actions is that an action accrues when the plaintiff is injured."  Koe v. Mercer, 876 N.E.2d 831, 836 (Mass. 2007).  With respect to defamation claims, "the cause of action accrues, and the statute of limitations begins to run, on publication of the defamatory statement." Harrington v. Costello, 7 N.E.3d 449, 453 -454

17

(Mass. 2014).  Massachusetts mollifies these rules by applying a
discovery rule.  <u>See</u> <u>Shay v. Walters</u>, 702 F.3d 76, 80 (1st Cir.
2012); <u>see</u> <u>Donovan v. Philip Morris USA, Inc.</u>, 914 N.E.2d 891,
903 (Mass. 2009).  Under the discovery rule, as recently
clarified by the Massachusetts Supreme Judicial Court in
<u>Harrington</u>, the three year limitations period starts "when the
plaintiff discovers or with reasonable diligence should have
discovered that (1) he has suffered harm; (2) his harm was caused
by the conduct of another; and (3) the defendant is the person
who caused that harm."  <u>Harrington v. Costello</u>, 7 N.E.3d at 454.
The discovery rule, however, only applies when "a plaintiff has
suffered an 'inherently unknowable' wrong."  <u>Id.</u>; <u>see</u> <u>RTR</u>
<u>Technologies, Inc. v. Helming</u>, 707 F.3d 84, 90 (1st Cir. 2013)
(in Massachusetts, discovery rule "pertains only to those
plaintiffs whose injuries are 'inherently unknowable'"); <u>George</u>
<u>Knight & Co., Inc. v. Watson Wyatt & Co.</u>, 170 F.3d 210, 213 (1st
Cir. 1999) (to toll limitations under "discovery rule, 'the
factual basis for the cause of action must have been "inherently
unknowable" at the time of the injury'").

     The accrual of the section 1983 and 1985 claims, which
presents a question of federal law, occurs "'"when the plaintiff
knows, or has reason to know of the injury on which the action is
based."'"  <u>Velez-Velez v. Puerto Rico Highway and Transp.</u>
<u>Authority</u>, 795 F.3d 230, 235 (1st Cir. 2015); <u>accord</u> <u>Vistamar,</u>
<u>Inc. v. Fagundo-Fagundo</u>, 430 F.3d 66, 70 (1st Cir. 2005).
Furthermore, "'a plaintiff is deemed to know or have reason to

know at the time of the act itself and not at the point that the harmful consequences are felt.'"[9]  <u>Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez</u>, 659 F.3d 42, 50 (1st Cir. 2011); <u>Gorelik v. Costin</u>, 605 F.3d 118, 122 (1st Cir. 2010) (section 1983 claim).

The amended complaint alleges that in June 2010 Cambridge police arrested plaintiff based on the false arrest warrant for the unpaid 1996 motor vehicle fine.  Plaintiff, however, paid the fine and the court dismissed the June 2010 criminal charges. Plaintiff suffered the head injury while being transported to court the day after the arrest and underwent "months of medical care."  (Docket Entry # 27, ¶ 1).

Plaintiff knew or had sufficient notice that he was harmed or injured with respect to the false arrest because the court dismissed the charges and the "judge stated that the record clearly showed [plaintiff] had paid the fine back in May, 1996 and there was no basis for his arrest."  (Docket Entry # 27, ¶ 1).  Moreover, plaintiff knew he paid the fine in 1996.  He also knew or a reasonable person would have known that the cause of the harm was the Cambridge police who arrested him and brought the false charges.

As to the head injury, plaintiff knew he was injured in late June 2010 because he received treatment for the injury at Mount

---

[9]  The facts do not provide a plausible basis to apply the continuing violation doctrine.  <u>See</u> <u>Salcedo v. Town of Dudley</u>, 629 F.Supp.2d at 98 n.8.

Auburn and required "months of medical care."  (Docket Entry #
27, ¶ 1).  The injury occurred while plaintiff was "in Cambridge
Police custody . . . being transported to court."  (Docket Entry
# 27).  Plaintiff therefore knew that the City, through the
misconduct of the Cambridge Police Department, was the entity
that caused the harm.  Indeed, he notes that the City agreed to
cover $25,000 of his medical expenses.  The settlement referenced
in the amended complaint took place in November 2010, more than
three years before plaintiff filed suit.

With respect to the state law tort claims, the wrongs
regarding the June 2010 arrest and the head injury were not
inherently unknowable.  The factual basis for the claims was not
incapable of detection by plaintiff by the exercise of reasonable
diligence.  With respect to the federal civil rights claims,
plaintiff knew or had reason to know of the injuries regarding
the false arrest in 2010 and the injuries to his head in June
2010.  See Salcedo v. Town of Dudley, 629 F.Supp.2d at 98 ("claim
for wrongful arrest normally accrues on the date of the arrest").

Plaintiff attempts to avoid the three year time period on
the basis that he "continues to suffer from the long-term effects
of the head injury, including occasional migraine, head pressure,
memory loss, etc."[10]  (Docket Entry # 70).  The accrual of the
state law claims, however, "is not postponed due to uncertainty

---

[10]  Plaintiff's submission without leave of court of a
doctor's note reflecting an evaluation for attention deficit
disorder at Mount Auburn (Docket Entry # 84-1), even if
considered part of the record, does not change the outcome vis-à-
vis the statute of limitations bar.

about the total extent of the damages." Day v. Kerkorian, 887
N.E.2d 1098, 1102 (Mass.App.Ct. 2008) (internal brackets and
quotation marks omitted).  A plaintiff "does not have to fully
comprehend the full extent or nature of an injury in order for a
cause of action to accrue."  Koe v. Mercer, 876 N.E.2d 831, 837
(Mass. 2007).  Separately, the factual circumstances do not
provide a plausible basis to find that the City, Crowley or
Dimascio fraudulently concealed the cause of action.  See Mass.
Gen. L. ch. 260, § 12.

Under federal law as noted above, "a plaintiff is deemed to
know or have reason to know" of the injury "at the time of the
act itself and not at the point that the harmful consequences are
felt.'"  Asociacion de Suscripcion Conjunta del Seguro de
Responsabilidad Obligatorio v. Juarbe-Jimenez, 659 F.3d at 50;
Gorelik v. Costin, 605 F.3d at 122.  A reasonable person would
link the harm to the misconduct of the Cambridge police and the
fact that plaintiff or a reasonable person did not know the full
extent of the injuries or the harmful consequences does not
postpone the accrual of the cause of action.  Accordingly, to the
extent the state law claims or the section 1983 and 1985 claims
are based on the June 2010 incident, they are time barred.[11]

As a final matter, the City moves to dismiss Count Three due

---

[11]   The untimeliness of the June 2010 incident moots
plaintiff's argument (Docket Entry # 70, § 5) regarding his lack
of understanding or coercion in purportedly agreeing to release
liability in exchange for $25,000.

to the absence of any policy or custom.  Count Three seeks to
impose liability on the City under sections 1983 and 1985.

Municipal liability under section 1983 is neither vicarious
nor based on respondeat superior.  Monell v. New York City Dept.
of Soc. Services of the City of New York, 436 U.S. 658, 690
(1978); Estate of Bennett v. Wainwright, 548 F.3d 155, 177 (1st
Cir. 2008) ("municipal liability is not vicarious"); Marrero
-Rodriguez v. Municipality of San Juan, 677 F.3d 497, 503 (1st
Cir. 2012) (municipality cannot be sued under section 1983 "on a
respondeat superior theory").  Section 1983 only imposes
liability on local governments "for 'their own illegal acts.'"
Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011) (quoting Pembaur
v. Cincinnati, 475 U.S. 469, 479 (1986)).  A plaintiff must
therefore "identify a municipal 'policy' or 'custom' that caused
the plaintiff's injury."  Board of County Commissioners of Bryan
County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997); Connick v.
Thompson, 131 S.Ct. at 1359 (plaintiffs "must prove that 'action
pursuant to official municipal policy' caused their injury");
City of Canton v. Harris, 489 U.S. 378, 385–387 (1989) (plaintiff
must establish direct link between the municipal policy and the
constitutional violation).  Liability under section 1985(3)
likewise requires the plaintiff "to demonstrate . . . the
existence of a policy or custom."  Bolduc v. Town of Webster, 629
F.Supp.2d 132, 151 n.28 (D.Mass. 2009) (to the extent section

22

1985(3) "claim is even cognizable, plaintiff would be required to demonstrate both the existence of a policy or custom of race-based witness intimidation and a 'direct causal link' between that policy and the alleged conspiracy"); see Owens v. Haas, 601 F.2d 1242, 1247 (2nd Cir. 1979); Maisonet v. City of Philadelphia, 2007 WL 1366879, at *3 (E.D.Pa. May 7, 2007) ("claims brought under § 1985 must allege that the underlying constitutional deprivation resulted from an official municipal policy or custom"); Eiland v. Hardesty, 564 F.Supp. 930, 934 (D.C.Ill. 1982) (to state section 1985 claim against a city, "complaint must allege an official policy or custom which relates to matters stemming from or resulting in the conspiracy" and "city's liability will only rest upon its own actions, rather than on the theory of respondeat superior").

A "custom 'must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" Estate of Bennett v. Wainwright, 548 F.3d at 177 (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989)). A "policy" results from "the decisions of [the municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. at 403-404. An official policy thus

"includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Connick v. Thompson, 131 S.Ct. at 1359.

The underlying misconduct alleged in the amended complaint involves unidentified Cambridge patrol officers who initiated the false arrest and charges in June 2010 based on the 1996 motor vehicle fine.  The day after the arrest and overnight incarceration, plaintiff suffered the severe head injury while "being transported to court" in the custody of the "Cambridge Police." (Docket Entry # 27).  In June 2011, Dimascio applied for the criminal complaint charging plaintiff with criminal harassment and making annoying telephone calls.  Dimascio and/or other Cambridge patrol officers failed to conduct a proper investigation and interview plaintiff before "commencing his prosecution." (Docket Entry # 27, ¶ 6).  Dimascio also neglected to ask either Alexandra or Christine Moser to show her plaintiff's text messages thus indicating an "intent to engage in [a] conspiracy against [plaintiff] to cause him [to] suffer the indignity of criminal charges against him." (Docket Entry # 27). The amended complaint is bereft of any mention of a custom, a decision by the Cambridge City Council or by any other policymaking Cambridge official.  In fact, the amended complaint states that the "Cambridge police officers" initiated the

prosecution without speaking to plaintiff "as mandated by
Cambridge Police standard operating procedure." (Docket Entry #
27, p. 7). Hence, the amended complaint indicates that the
Department's and, by extension, the City's procedures were
proper. Count Three is therefore subject to dismissal with
respect to the City.

The Department moves to dismiss the claims in the amended
complaint because it is not an entity separate from the City.
(Docket Entry # 37). More specifically, it is "not a suable
entity," according to the Department. (Docket Entry # 38).
Plaintiff fails to address the issue thereby waiving any argument
to the contrary. See Watson v. Trans Union LLC, 2007 WL 613724,
at *1 (1ˢᵗ Cir. March 1, 2007) (noting that "while pro se
litigants are held to a less stringent standard, they are not
immune from [the] requirements" of a waiver) (citation omitted).

In the alternative, the Department's position is well taken.
As a police department, the Department has no legal existence
separate and apart from the City. See Almeida v. Fall River
Police Station, 2012 WL 3548063, at *4 (D.Mass. Aug. 13, 2012)
("[a]ny claims against the FR Police are not cognizable because
the FR Police has no legal existence or liability to suit
separate from its city"); accord Winfield v. Perocchi, 2015 WL
4482940, at *3 (D.Mass. July 22, 2015) (state and federal claims
for gross negligence and deliberate indifference against Lawrence

Police Department may be brought only "against the municipality, i.e., the City"); Stratton v. City of Boston, 731 F.Supp. 42, 46 (D.Mass. 1989) (police department "is a department of the City of Boston" and "not an independent legal entity"); see also Henschel v. Worcester Police Dept., Worcester, Mass., 445 F.2d 624, 624 (1st Cir. 1971) (affirming dismissal of section 1983 action against police department because it was not suable entity and stating, if department "may be successfully sued, it is the city which will pay"). Simply stated, in order to sue a department of the City, "it must 'enjoy a separate legal existence.'" Darby v. Pasadena Police Dept., 939 F.2d 311, 313 (5th Cir. 1991). In the case at bar, there is no indication that the Police Department of the City of Cambridge is anything other than a department of the City. The claims against the Department are therefore subject to dismissal.

II. Rule 12(b)(5) Motions (Docket Entry ## 37, 52)

Crowley and Dimascio submit that this court lacks jurisdiction over them because plaintiff has not complied with the requirements of service of process. Accordingly, they move to dismiss the claims against them under Rule 12(b)(5). (Docket Entry ## 37, 52). Plaintiff maintains that he properly served both officers. (Docket Entry # 70).

When faced with a Rule 12(b)(5) motion for insufficiency of process, this court may "look beyond the pleadings and may consider affidavits and other documents to determine whether

process was properly served." <u>Morse v. Massachusetts Executive</u>
<u>Office of Public Safety</u>, 2013 WL 1397736, at *1 (D.Mass. April 4,
2013); <u>see</u> <u>also</u> Fed.R.Civ.P. 4(l)(1).  Factual ambiguities are
"resolved squarely in the plaintiff's favor."  <u>Id.</u>

   Prior to the evidentiary hearing, the parties submitted
affidavits and documentary evidence.  Similar affidavits and
executed returns of service led the court in <u>Blair v. City of</u>
<u>Worcester</u>, 522 F.3d 105, 111-115 (1st Cir. 2008), to reverse the
lower court's dismissal of the case for lack of service of
process and remand the matter for an evidentiary hearing and
limited discovery.  <u>Id.</u>  Accordingly, this court set an
evidentiary hearing to afford plaintiff an opportunity to cross
examine the front desk officers and submit any additional
evidence of agency and proper service.  <u>See</u> <u>id.</u> at 111 ("factual
disputes regarding agency should typically be resolved only after
a live hearing in order to explore issues of 'credibility and
resolve unanswered questions implicated by the parties'
briefing'") (citations and ellipses omitted); <u>Rivera-Lopez v.</u>
<u>Municipality of Dorado</u>, 979 F.2d 885, 887 (1st Cir. 1992)
(reversing and remanding factual issue of individual's authority
to accept service which, "in view of its importance," should be
resolved in "a hearing on live testimony, not on conflicting
affidavits").

<u>FACTUAL BACKGROUND</u>

27

In two executed returns of service, process server Tomas
Rast ("Rast") attests that on November 20, 2014, he personally
served summons on Crowley and Dimascio at the "Cambridge Police
125 6th Street, Cambridge, Ma." (Docket Entry ## 32, 33). The
address is the headquarters of the Cambridge Police Department.
In affidavits dated in late March 2015, Dimascio and Crowley
attest that they have *not* been served with a summons and a
complaint in this case. (Docket Entry ## 53-3, 53-4).

The front desk patrol officer at the Cambridge Police
Department on November 20, 2014, Mark Smith ("Smith"), attests
that he was not authorized to accept service for either Crowley
or Dimascio. (Docket Entry # 38-2). Crowley and Dimascio both
aver that they did not authorize anyone to accept service on
their behalf. (Docket Entry ## 53-3, 53-4). In an affidavit,
Smith states that on November 20, 2014, an individual, who this
court concludes was Rast, slipped two summonses, one addressed to
Crowley and the other addressed to Dimascio, along with two
copies of the amended complaint through a mail slot in the front
lobby while Smith was on duty. (Docket Entry # 38-2). Smith
avers that he did not agree to accept service for Crowley or
Dimascio or to deliver the summonses and the amended complaints
to Crowley or Dimascio. (Docket Entry # 38-2).

On February 17, 2015, plaintiff completed a form for
constable Robert Sweeney ("Sweeney") of Constable Services in

Cambridge asking him to "serve the 2 Cambridge Police Officers properly as required by law." (Docket Entry # 70-1, p. 13). The summonses plaintiff provided Sweeney for Dimascio and Crowley set out the address of the Cambridge Police Department's headquarters at 125 Sixth Street in Cambridge.[12]  In two subsequently executed returns of service for Crowley and Dimascio, Sweeney attests that on March 2, 2015, he served the summonses on "Officer Marchetti, who is designated by law to accept service of process on behalf of" the "Cambridge Police Dept: 125 6th St[reet]" in Cambridge, Massachusetts. (Docket Entry ## 60, 61). By affidavit, Sweeney adds that he left the two summonses with an officer at the Cambridge Police Department, who told Sweeney "she was authorized to accept service." (Docket Entry # 70-1). Melissa Miceli ("Officer Miceli"), the patrol officer assigned to the front desk at the Cambridge Police Department on March 2, 2015, testified that she did not tell Sweeney she could accept the summonses or that Crowley or Dimascio authorized her to accept the summonses.[13]

---

[12]  In accordance with this court's January 28, 2015 Order, the Clerk issued five new summonses.

[13]  Even if this court considered Sweeney's above hearsay statement of what Miceli told him, the overwhelming weight of the evidence establishes that she was not expressly or impliedly authorized by Crowley or Dimascio to accept service on their behalf. As discussed below, Miceli's statement recounted by Sweeney, standing alone, does not establish an express or implied agency relationship. Separately, notwithstanding Sweeney's misspelling of Miceli's name, this court finds it is the same individual.

By affidavit and as noted above, Dimascio and Crowley state they have not provided authority to any individual, including Miceli, to accept legal process on their behalf. (Docket Entry ## 53-3, 53-4). Miceli testified that an individual came into the lobby and asked her if he could leave summonses.[14] Miceli advised the individual, who this court concludes was Sweeney, that it was okay to leave the summonses. Sweeney then slipped the summonses, which were in envelopes with Crowley's and Demascio's names, under the mail slot and left the premises.

Upon viewing the names, Miceli emailed Crowley and Dimascio to the effect that they had a letter at the front desk. She could not recall the exact words of the emails. Dimascio did not respond to the email. Crowley appeared a short time later and took the summons. On direct examination, Miceli testified that she did not tell or otherwise inform Sweeney that she could accept service on behalf of either Crowley or Dimascio.[15] Miceli also did not advise Sweeney that she would deliver the summonses to either Crowley or Dimascio. Miceli emphatically testified that neither Crowley nor Dimascio authorized her to accept service on their behalf. Miceli, a November 2014 graduate of the

---

[14] She could not remember if the individual arrived in the morning or the afternoon.

[15] This court does not credit Miceli's testimony on cross examination that she could not recall if she told Sweeney she was authorized to accept service.

Police Academy, has not accepted service on behalf of any other officer of the Cambridge Police Department during her employment.

## DISCUSSION

Personal jurisdiction over Crowley and Dimascio "depends on legally sufficient service of process." Vázquez-Robles v. CommoLoCo, Inc., 757 F.3d 1, 4 (1st Cir. 2014).  Rule 4 of the Federal Rules of Civil Procedure ("Rule 4") governs service of process in federal court.  Id.  Where, as here, the defendants challenge the adequacy of service, "the plaintiff has the burden of showing that service was proper."  Id.; accord Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 612 n.28 (1979) ("party claiming that a court has power to grant relief in his behalf has the burden of persuasion on the jurisdiction issue").

Rule 4(e) prescribes the manner of effectuating proper service of the summons and the amended complaint.  Under the rule, service may be accomplished on an individual under the law of "the state where the district court is located," i.e., Massachusetts.  Fed.R.Civ.P. 4(e)(1).  Alternatively, service may be accomplished by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e)(2).  Like Rule 4(e)(2), Massachusetts rules allow service on an individual "by delivering a copy of the

31

summons and of the complaint to him personally; or by leaving copies thereof at his last and usual place of abode; or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by statute to receive service of process." Mass.R.Civ.P. 4(d)(1) ("Massachusetts Rule 4(d)") .

"A return of service generally serves as *prima facie* evidence that service was validly performed." Blair v. City of Worcester, 522 F.3d at 111. The executed returns of service by Rast provide prima facie evidence that, as stated therein, he "personally served the summons on" Crowley and on Dimascio at the Cambridge Police Department on November 20, 2014. The subsequent affidavits by Crowley and Dimascio, both of which deny being served, along with the affidavit of the front desk officer, Smith, more than adequately rebut the presumption of valid service created by the November 2014 executed returns. See id. at 112. Rast simply slipped the summonses through the mail slot to an unauthorized agent and left the building. Overall, there is insufficient evidence that Rast personally delivered copies of the summons and the amended complaint to either Crowley or Dismacio on November 20, 2014.

As to whether Sweeney properly delivered of the summons and the amended complaint to Crowley "personally" within the meaning of either Rule 4(e)(2)(A) or Massachusetts Rule 4(d)(1), "a face to face encounter and an in hand delivery of the papers is not always essential." 4A Charles Alan Wright et al., Federal

Practice and Procedure § 1095 (3rd ed. 2002).  Under such
circumstances, leaving the summons and complaint "in the
defendant's physical proximity is usually sufficient if (1)
defendant actively evades service, and (2) there is clear
evidence that the defendant actually received the papers at issue
when allegedly served." World Entertainment Inc. v. Brown, 487
F.App'x 758, 761, 2012 WL 3065349, at *2 (3rd Cir. July 30,
2012); accord 4A Charles Alan Wright et al. Federal Practice and
Procedure § 1095 (3rd ed. 2002) ("it usually is sufficient for
the process server to touch the party to be served with the
papers and leave them in the defendant's presence or, if a
touching is impossible, simply to leave them in the defendant's
physical proximity"); see, e.g., Villanova v. Solow, 1998 WL
643686 at *1 (E.D.Pa. Sept. 18, 1998) (service was proper, after
defendant's multiple evasions, when process server "announced he
was putting the summons and pleadings through the mail slot in
the front door" of defendant's residence after defendant refused
to open it).  Thus, "When a person refuses to accept service,
service may be effected by leaving the papers at a location, such
as on a table or on the floor, near that person." Novak v. World
Bank, 703 F.2d 1305, 1310 n.14 (D.C.Cir. 1983).  Here, there is
no evidence that Crowley is evading service.  In fact, on March
2, 2015, Crowley's counsel offered to make him available to
accept service in hand and plaintiff refused two days later, as

stated in counsel's affidavit.[16]   (Docket Entry # 53-1).   In addition, slipping the summons and the amended complaint through the mail slot did not place the documents in Crowley's physical proximity.[17]

There is also no evidence that the process servers (Rast and Sweeney) left copies of the summons and the amended complaint at either Crowley's or Dimascio's usual place of abode.   See Abu-Shawish v. United States, No. 13-1419, 546 F.App'x 576, 579 (7th Cir. Nov. 4, 2013) ("person's place of employment is not an 'abode'"), cert. denied, 134 S.Ct. 2735 (2014);[18] Foley v. Walsh, 600 N.E.2d 611, 612-613 (Mass.App.Ct. 1992) (quoting Bell v. Hosse, 31 F.R.D. 181, 185 (M.D.Tenn. 1962), in parenthetical that, "police station is not 'usual place of abode' under

---

[16]   Six months later on September 11, 2015, plaintiff filed a "notice" that he now "consents to the proposal made by counsel."   (Docket Entry # 96).   Plaintiff initially rejected the offer.   Whether Crowley and Dimascio's counsel presently wishes to make them available for service at a mutually convenient time is entirely his decision.   Further, in contrast to counsel's affidavit evidence, there is no evidence to support plaintiff's assertion in December 2014 that, "Plaintiff per consent of the defendant's attorney has re-served the summons on the defendants by faxing them to attorney Sean McKendry per his own consent." (Docket Entry # 40).

[17]   Miceli could not recall if Sweeney asked to see either Crowley or Dimascio.   The evidence establishes that Sweeney did not hand or deliver the summonses to either Crowley or Dimascio.

[18]   See Fed.R.App.P. 32.1 ("court may not prohibit or restrict the citation of federal judicial opinions . . . that have been . . . (i) designated as 'unpublished' . . .; and (ii) issued on or after January 1, 2007").   The Abu-Shawish decision, however, does not provide any precedent.   See 7th Cir.R. 32.1; United States v. Townsend, 762 F.3d 641, 646 (7th Cir. 2014), cert. denied, 135 S.Ct. 1442 (2015).

F.R.Civ.P. 4(d)(1)").  Likewise, under Massachusetts Rule
4(d)(1), leaving process at a defendant police officer's
"business address is incorrect as matter of law" because "service
upon his employer at State police headquarters or a State police
barracks" is "insufficient."  Foley v. Walsh, 600 N.E.2d at 612.
Crowley's receipt of the summons at his business address
establishes his actual knowledge of the lawsuit but it is not
proper service of the summonses and the amended complaint to his
place of abode.[19]

The inquiry therefore reduces to whether plaintiff
accomplished service on an authorized agent under Rule 4(e)(2)(C)
or Massachusetts Rule 4(d)(1).  The inquiry further reduces to
whether either of the front desk officers had express or implied
actual authority to accept service of process for Crowley or
Dimascio.  See Patino v. City of Revere, 2014 WL 202760, at *4
(D.Mass. Jan. 16, 2014) ("relevant inquiry" is whether the
individual accepting service "had *actual authority* to receive
process") (emphasis in original).  An agent's apparent authority
to accept service does not provide a means to establish service
of process in compliance with Rule 4(e)(2).  See Vázquez-Robles

---

[19]   This court does assume, however, that Crowley's as well
as Dimascio's actual notice of the suit engenders a more liberal
construction of the record in favor of upholding service in lieu
of dismissing the claims against them without prejudice based on
technical defects.  See Ohio Farmers Insurance Co. v. Wagner,
2013 WL 5739756, at *2 (N.D.Ohio Oct. 22, 2013); Curley v. Radow,
2007 WL 2060015, at *4 n.2 (D.Mass. July 16, 2007) ("[a]lthough
actual notice alone is insufficient to satisfy the burden of
service, generally, actual notice will lead courts to apply a
liberal construction of the rules of service" and "overlook
technical errors").

v. CommoLoCo, Inc., 757 F.3d at 6 ("[f]rom a legal perspective,
it is doubtful that the doctrine of apparent agency has any
purchase in the context of service of process"); Blair v. City of
Worcester, 522 F.3d at 113; Donnelly v. UMass Correctional
Medical Program, 2010 WL 1924700, at *1 (D.Mass. May 11, 2010)
("federal courts look to the circumstances of the agency
relationship, and although authority to accept process need not
be explicit, it must either be express or implied from the type
of relationship that has been established between the defendant
and alleged agent").  An agent's apparent authority to act on
behalf of a city official also fails to provide a basis to
establish service of process on the official under Massachusetts
Rule 4(d)(1).  See generally Dagastino v. Commissioner of
Correction, 754 N.E.2d 150, 152-153 (Mass.App.Ct. 2001)
("doctrine of apparent authority does not apply to the
government, its agencies, or its officials"); Commissioner of
Revenue v. Carrigan, 698 N.E.2d 23, 25 (Mass.App.Ct. 1998)
(interpreting Massachusetts Rule 4(j) and "look[ing] to judicial
interpretations of the parallel Federal rule for guidance absent
pertinent State precedent, 'compelling reasons to the contrary or
significant differences in content'").  Accordingly, neither Rule
4(e)(2) nor Massachusetts Rule 4(d)(1) allow service of a
defendant at his place of employment by leaving the summons and
the complaint with an individual who is not expressly or
impliedly authorized to accept service for the defendant.  See
Newman v. Metropolitan Life Ins. Co., 2015 WL 275703, at *6

(D.Mass. Jan. 21, 2015) (service "'not sufficient if left at an individual's place of employment with someone not authorized to accept service on the individual's behalf'"); <u>Levesque v. Rutland County Sheriff's Dep't</u>, 2010 WL 4916567, at *1 (D.N.H. Dec. 1, 2010). "In the employment context, a person cannot innocently accept service of process on behalf of a coworker without having been explicitly given such authority." <u>Donnelly v. UMass Correctional Medical Program</u>, 2010 WL 1924700, at *1.

There is no evidence that either Crowley or Dimascio gave their express authority to Smith or Miceli to accept service of process on their behalf. By affidavits, Crowley and Dimascio disavow any such authority. Miceli testified that Crowley and Dimascio never authorized her to accept service on their behalf. Any statements by Miceli to Sweeney "alone are insufficient to prove actual authority," <u>Patino v. City of Revere</u>, 2014 WL 202760, at *4, although they may provide a basis to convene an evidentiary hearing, <u>see</u> <u>Blair v. City of Worcester</u>, 522 F.3d at 112-113. "[I]t is hornbook law that '[a]n agent's authority to act cannot be established solely from the agent's actions" and that such "authority must be established by an act of the principal.'" <u>Vázquez-Robles v. CommoLoCo, Inc.</u>, 757 F.3d at 6. The executed returns of service by Sweeney dated March 2, 2015, are not convincing. They describe Miceli as designated to accept service for the Cambridge Police Department as opposed to either Crowley or Dimascio. Moreover, Miceli's testimony refutes any showing that she could accept service for the Cambridge Police

Department or, more importantly, either Crowley or Dimascio.

There is also no evidence that front desk patrol officers at the Police Department of the City of Cambridge routinely accepted service for individual patrol officers on multiple occasions in the past. See Blair v. City of Worcester, 522 F.3d at 112-115 (affidavit that process servers served "police officers 'hundreds' of times" by leaving summonses and complaints at police chief's office coupled with evidence from another case that the defendants accepted service without objection was enough to warrant evidentiary hearing); cf. Patino v. City of Revere, 2014 WL 202760, at *4 (process server's affidavit that he "served many police officers at police stations over the years, and someone other than the named defendant often accepts service on their behalf" did not establish service of process). In short, there is an insufficient basis to find that either Miceli or Smith had implied actual authority to accept the summonses and the amended complaints on behalf of either Crowley or Dimascio.

As a final matter, the amended complaint fails to indicate whether Crowley and Dimascio are sued in their individual or official capacity. Liberally construing the pleading in light of plaintiff's pro se status, plaintiff sued Crowley and Dimascio in both capacities. The foregoing rules, which govern service of process of the claims against Crowley and Dimascio in their individual capacities, also govern "service of process for public employees sued in their official capacities" under Rule 4(e)(2). Caisse v. DuBois, 346 F.3d 213, 216-217 & n.5 (1st Cir. 2003).

In contrast, "Massachusetts law regarding service of official capacity suits is unsettled." Id.

Accordingly, the foregoing discussion does not completely resolve the issue of service with respect to the official capacity claims applying Massachusetts law pursuant to Rule 4(e)(1).  Assuming that Massachusetts law requires service of process of official capacity suits against an individual police officer under Massachusetts Rule 4(d)(4), however, there is no evidence that Crowley or Dimascio were served with process in accordance with this rule.[20]  As previously explained, service under Massachusetts Rule 4(d)(1) is deficient.  Hence, plaintiff fails in his burden to show proper service applying Massachusetts state law through Rule 4(e)(1).

Service of process under Massachusetts Rule 4(d) of the individual and official capacity claims in Count Seven is governed by statute.  See Mass. Gen. L. ch. 258, § 6; Mass. R. Civ. P. 4(d)(1) (allowing service of agent authorized "by statute to receive service of process"); Caisse v. DuBois, 346 F.3d at 217-218 (state law negligence claims subject to service under

---

[20]   The rule requires service:

> Upon the Commonwealth or any agency thereof by delivering a copy of the summons and of the complaint to the Boston office of the Attorney General of the Commonwealth, and, in the case of any agency, to its office or to its chairman or one of its members or its secretary or clerk. Service hereunder may be effected by mailing such copies to the Attorney General and to the agency by certified or registered mail.

Mass. R. Civ. P. 4(d)(3).

Mass. Gen. L. ch. 258, § 6). Section six of chapter 258 requires service on "the public attorney" as defined in the statute or, if there is no public attorney, service on "the executive officer" of the public employer. Mass. Gen. L. ch. 258, § 6. Here again, there is no indication that plaintiff complied with these requirements with respect to Count Seven. See generally Caisse v. DuBois, 346 F.3d at 217-218 (distinguishing between timely service of the negligence claims under section six of chapter 258 and untimely service of the other claims). To state the obvious, service of a summons and complaint to a different defendant, such as the Department (Docket Entry # 34), does not establish service on Crowley and Dimascio in their individual or official capacity with respect to Count Seven.

In sum, plaintiff fails in his burden to show proper service under Rule 4(e), Massachusetts Rule 4(d)(1) and (4) and, with respect to Count Seven, under chapter 258, section six. Rule 4(m) requires service "within 120 days after the complaint is filed."[21]  Fed.R.Civ.P. 4(m). The amended complaint added both Crowley and Dimascio as defendants. Where, as here, the amended complaint added new defendants, it "must be served upon such defendants 'within 120 days after the amended complaint is filed.'" Brait Builders Corp. v. Massachusetts, Div. of Capital Asset Management, 644 F.3d 5, 9 (1st Cir. 2011) (quoting Rule

---

[21]  The corresponding Massachusetts rule, Mass. R. Civ. P. 4(j), does not apply. See Feliz v. MacNeill, 2012 WL 3590807, at *3 (1st Cir. Aug. 22, 2012) (applying Massachusetts Rule 4(j) prior to removal and stating that, after removal, "the federal rules governing service of process applied").

4(m)). More than 120 days has passed since plaintiff filed the amended complaint on November 4, 2014.

Under Rule 4(m), if a defendant is not served within the 120 day time period, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed.R.Civ.P. 4(m); see Crispin-Taveras v. Municipality of Carolina, 647 F.3d 1, 7 (1st Cir. 2011) (citing Rule 4(m) and noting that, "district court is not required to dismiss a defendant when service is not made within the 120-day deadline"). Rule 4(m) also requires the court to extend the time to accomplish service for an appropriate period "if the plaintiff shows good cause." Fed.R.Civ.P. 4(m). The rule reads as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

Although plaintiff did not expressly request an extension, he argued that he completed all the steps within his power to effectuate service and quoted Benjamin v. Grosnick, 999 F.2d 590, 592 (1st Cir. 1993) (finding abuse of discretion for court to allow Rule 4(j) motion to dismiss and stating that, appellants "completed all of the steps within their power necessary to effectuate such service"). (Docket Entry # 70). Benjamin addressed a single issue, namely, the existence of good cause

41

under Rule 4(j), the predecessor to Rule 4(m).  Id. at 591–593.
Accordingly, this court turns to whether plaintiff showed good
cause under Rule 4(m).

The First Circuit in Benjamin found good cause where the
delay in effectuating service did not prejudice the defendants
but did prejudice the plaintiffs because the statute of
limitations had run on certain claims, the plaintiffs completed
"all of the steps within their power necessary to effectuate"
service and "blame for the error rested with the" process server.
Id. at 592.  The court also noted that, because of the process
server's "sworn representations in the return of service, [the
plaintiffs] reasonably believed that they had personally served
[the defendants]."  Id.  The court in Patino sets out similar
considerations:

> Good cause is likely (but not always) to be found when the
> plaintiff's failure to complete service in a timely fashion
> is a result of a third person, typically the process server,
> the defendant has evaded service of the process or engaged
> in misleading conduct, the plaintiff has acted diligently in
> trying to effect service or there are understandable
> mitigating circumstances, or the plaintiff is proceeding pro
> se or in forma pauperis.  Pro se status or any of the other
> listed explanations for a failure to make timely service,
> however, is not automatically enough to constitute good
> cause for purposes of Rule 4(m).

Patino v. City of Revere, 2014 WL 202760, at *5 (quoting McIsaac
v. Ford, 193 F.Supp.2d 382, 383 (D.Mass. 2002)) (omitting
brackets and quotation marks).

Here, during the 120 day time period, plaintiff, who is pro
se, twice attempted to effectuate proper service.  He also
completed a form asking Sweeney to serve Crowley and Dimascio

"properly as required by law" and provided Sweeney with the business address of the officers.  See generally Baez v. Connelly, 2012 WL 1352319, at *2 (1st Cir. April 19, 2012) (per curiam) (recognizing that prisoner might not have access to law enforcement officer's home address but "[i]t may be reasonable to require a prisoner to provide a business address for a law enforcement officer").  The three year statute of limitations applicable to various claims may present a bar although the prejudice to plaintiff likely remains unchanged because he filed the amended complaint more than three years after the June 2011 incident.  There is little indication that Crowley and Dimascio will be prejudiced inasmuch as Crowley had actual notice of the lawsuit no later than March 2, 2015, and Dimascio had actual knowledge of the lawsuit no later than March 24, 2015, when she signed her affidavit.  See Benjamin v. Grosnick, 999 F.2d at 592 ("defective service did not prejudice appellee" and noting that "[a]ppellee had actual notice of the lawsuit").

On the other hand, there is no indication that Crowley or Dimascio attempted to evade service.  To the contrary, their counsel left plaintiff a voice mail on March 2, 2015, offering to arrange a mutually convenient time to make his clients "available so that they could each be served in hand."  (Docket Entry # 53-1).  Plaintiff declined the offer two days later.[22]

Balancing and considering the relevant factors, a final and brief extension of time for an appropriate period to accomplish

---

[22]  See footnote 15.

43

service on Crowley and Dimascio is warranted.   An appropriate
period is 30 days from the date of this opinion.   Plaintiff may
obtain two new summonses from the clerk's office.   Although this
court recognizes the difficulty of serving police officers at
their place of abode, Patino v. City of Revere, 2014 WL 202760,
at *5 (home addresses of police officers are "protected by
statute from public disclosure"); Mass. Gen. L. ch. 66, § 10,
personal service under Rule 4(e)(2)(A) remains an option.   See
Baez v. Connelly, 2012 WL 1352319, at *2 ("it would seem that the
U.S. Marshal's [sic] Service likely would have been able to
accomplish service of process [on arresting officer] pursuant to
Rule 4(e)(2)(A) if the district court had directed the Service to
make further attempts").

CONCLUSION

In accordance with the foregoing discussion, this court
**RECOMMENDS**[23] that the motion to dismiss (Docket Entry # 37) be
**ALLOWED** to the extent that the Department is dismissed as a party
and **DENIED** without prejudice to the extent it seeks to dismiss
the claims against Crowley and Dimascio for inadequate service of
process.   Crowley and Dimascio may renew the motion in the event

---

[23] Any objections to this Report and Recommendation must be
filed with the Clerk of Court within 14 days of receipt of the
Report and Recommendation to which objection is made and the
basis for such objection.   See Fed.R.Civ.P. 72(b).   Any party may
respond to another party's objections within 14 days after
service of the objections.   Failure to file objections within the
specified time waives the right to appeal the order.

plaintiff fails to accomplish service within the above 30 day time period.  This court further **RECOMMENDS**[24] that the motion to dismiss (Docket Entry # 52) be **ALLOWED** to the extent that counts one, two, three, four, five, six and eight be dismissed against the City and that any claims arising out of the June 2010 incident be dismissed as untimely.

                     /s/ Marianne B. Bowler
                    **MARIANNE B. BOWLER**
                    United States Magistrate Judge

---

[24]   See the previous footnote.